SYGMA PHOTO NEWS, INC., Plaintiff,

v.

HIGH SOCIETY MAGAZINE, INC., Drake Publishers, Inc., and Dorjam Publications, Inc., Defendants.

No. 83 Civ. 7517 (RWS).

United States District Court, S.D. New York.

April 30, 1984.

On Renewed Motion For Summary Judgment Sept. 27, 1984.

Ben C. Friedman, New York City, for plaintiff.

Abelman, Frayne, Rezac & Schwab, New York City, for defendants; Lawrence E. Abelman, Jonathan L. Rosner, New York City, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Sygma Photo News, Inc. ("Sygma") has moved for summary judgment under Rule 56, Fed.R.Civ.P., against defendants High Society Magazine, Inc. ("High Society"), Drake Publishers, Inc. ("Drake") and Dorjam Publications, Inc. ("Dorjam"). High Society and Drake have moved to dismiss the complaint under Rule 12, Fed.R.Civ.P. Upon the facts and conclusions set forth below, Sygma's motion will be denied with leave to renew. The motion of High Society and Drake will be treated as one for summary judgment and will be denied. The action will proceed in accordance with the schedule set forth below.

The dispute between the parties arises out of the publication by Dorjam of its

"Superstars of Celebrity Skin, the Definitive Collector's Edition from High Society, Special No. 6" ("Superstars Edition") which has as its cover a photograph of an unadorned Raquel Welch ("Welch") which is alleged to be the copyrighted property of Sygma. Dorjam has conceded that the publication was without authorization. What has been placed in issue is the right of Sygma to enforce its claimed copyright and the liability of High Society and Drake for Dorjam's acts. Affidavits and exhibits have been submitted and preliminary discovery by way of interrogatories has gone forward. No depositions have been taken, and the following facts have been established by the record presently before the court.

In 1978, Tony Kent ("Kent") took several photographs of Welch. On December 12, 1978, Playboy Enterprises, Inc. ("Playboy") paid Kent $3,000 for an assignment of his rights to "Pictorial Raquel Welch Photographs by Tony Kent." By agreement of August 1, 1979, Playboy assigned all rights to photographs of Welch not used by Playboy to Raquel Welch Productions, Inc. ("RWPI"). In mid-1981, RWPI gave Sygma the exclusive right to distribute certain photographs and in that year Sygma granted to "Paris Match" magazine ("Paris Match") the right to use a photograph (the "Photograph") of Welch which thereafter became the cover of the Paris Match September 4, 1981 issue. The issue contained a general copyright notice. The Photograph also appeared on the cover of the Paris Match International edition, which contained a similar notice.

In February 1983, the Photograph was published as the cover of the Superstars Edition without the authorization of RWPI or Sygma. On May 31, 1983, RWPI assigned its rights in the Photograph to Sygma, describing it in a sworn statement by Welch as:

> that certain photograph entitled "RAQUEL WELCH" and alternatively titled "A 42 ANS, ELLE VEUT ETRE LA PLUS BELLE GRAND–MERE DU MONDE", photographed by Tony Kent in 1978, and

published as the cover and on page 11 of the September 4, 1981 issue of "PARIS MATCH" magazine.

Sygma then filed its application for copyright of the Photograph, claiming Kent as the author and describing the transfers just set forth.

■ Dorjam concedes the facts described, but denies the validity of the copyright, claiming that the facts fail to establish the chain of assignment, "particularly since the person alleged by plaintiff to be the author—Tony Kent,—did not assign copyright ownership to any specific photograph . . . ." The affidavits of Welch and Eliane Laffont, submitted on behalf of Sygma, establish that the Photograph was one of the photographs of Welch made by Kent in 1978. There is, however, no affidavit or sworn statement by a person with knowledge that establishes that the photographs Kent assigned to Playboy, which Playboy later assigned to RWPI, included the Photograph. In view of the logical inference to that effect and Sygma's supporting affidavits, it is highly likely that Sygma will be able to prove its chain of title. However, there is a possible factual dispute as to the chain of title. Although the burden is on defendants to overcome the presumption of validity accorded Sygma's copyright, *see Van Cleef & Arpels, Inc. v. Schechter*, 308 F.Supp. 674, 676 (S.D.N.Y.1969), the potential fact dispute requires the denial of summary judgment.

Dorjam also resists summary judgment on the ground that material misrepresentations were made in the copyright application, namely that Kent was the author of the Photograph and that the copyright application claimed first publication in the United States, as well as on the ground of omission of notice. While the court's conclusions as to these contentions are not necessary to the disposition of the present motion for summary judgment, perhaps their resolution will be helpful to the parties as the litigation proceeds.

As to the first ground, regardless of whether Kent is indeed the author of the Photograph under 17 U.S.C. § 201, in the

context of this dispute, the distinction is not material, assuming that Sygma is able to complete the proof of its claimed chain of title. *See Testa v. Janssen,* 492 F.Supp. 198 (W.D.Pa.1980).

The inconsistency as to the place of publication resulted after counsel for Sygma explained his dilemma as to the date of the first publication to the examiner. The resulting change in date may have left an error in the place of publication given on the copyright application, but this inconsistency is also not material. *See Midway Manufacturing Co. v. Bandai-America, Inc.,* 546 F.Supp. 125, 143 (D.N.J.1982) (misrepresentation must be intentional and must "harm or prejudice the defendant in some way or affect the validity of the copyright.")

■ As to the omission of notice, the Photograph was published as the cover of Paris Match, which contained a copyright notice the validity of which defendants have not challenged. Defendants state that Sygma and Welch "may have" authorized publication and sale of the Photograph in the United States without copyright notice. However, under 17 U.S.C. § 405(b), the infringer has the burden of proving it was misled by a publication without notice. Defendants have offered no evidence of omission of notice, and this defense is thus unavailable to defendants.

■ As for the motion to dismiss the complaint on behalf of High Society and Drake, an officer of defendants has stated by affidavit that High Society was the corporate publisher of High Society Magazine until 1979, when High Society terminated all business activities and transferred its assets to Drake. The officer also stated that in 1982, High Society adopted a plan of dissolution which was effectuated in 1983, and that Dorjam is the sole corporate publisher of the Superstars Edition and that High Society and Drake were not involved in or responsible for publication of the edition. Sygma has submitted copies of the masthead and publisher's letter of the Superstars Edition and of an issue of High Society, which show that the publisher, edi-

tor and other staff members of the two publications are the same. Each publication refers to the other. The print orders for the Superstars Edition refer to the issue as "High Society's Celebrity Skin # 6" and are written on High Society stationery. Defendants state that Dorjam was merely using old High Society stationery. Because the motion to dismiss was supplemented by the affidavit just referred to, the motion will be treated as one for summary judgment. Given the facts now before the court, a factual issue has been raised as to whether Drake and High Society are liable to Sygma as contributory infringers. *See Peter Pan Fabrics, Inc. v. Acadia Co.,* 173 F.Supp. 292, 298–99 (S.D.N.Y.1959), *aff'd,* 274 F.2d 487 (2d Cir.1960). Accordingly, defendants' motion is denied.

Summary judgment for Sygma is denied with leave to renew. Discovery will proceed to be completed by July 2, and the pretrial orders will be filed by July 9, 1984.

IT IS SO ORDERED.

## ON RENEWED MOTION FOR SUMMARY JUDGMENT

Sygma Photo News, Inc. ("Sygma") has renewed its motion for summary judgment against High Society Magazine, Inc. ("High Society"), Drake Publishers, Inc. ("Drake") and Dorjam Publications, Inc. ("Dorjam") for alleged copyright violations by their publication of a photograph of Raquel Welch (the "Photograph") in "High Society's Celebrity Skin." The motion is granted.

The underlying factual situation is set forth in this court's opinion of April 30, 1984. High Society, Drake and Dorjam do not deny that the publication of the Photograph was without authorization. However, defendants have challenged the authority of Sygma to enforce the copyright on the picture involved.

The denial of the prior motion for summary judgment resulted from a dispute as to whether the Photograph in dispute was actually among those taken by Tony Kent, assigned to Playboy Enterprises, Inc.

("Playboy"), and thereafter assigned to Racquel Welch Productions, Inc. ("RWPI"). In its renewed motion for summary judgment Sygma has submitted an unrebutted affidavit of Gary Cole, the director of Photography of Playboy stating his involvement in and responsibility for the negotiations and transactions with RWPI and Kent relating to the purchase and assignment of the Photograph which was among those assigned by Kent to Playboy and by Playboy to RWPI. No facts are now in dispute in this regard.

However, High Society, Drake, and Dorjam in an effort to defeat Sygma's enforcement of the copyright by summary judgment, now assert that a corporate entity other than Sygma N.Y. may have granted Paris Match the right to use the Photograph. Initially Sygma asserted both in its copyright papers and in this case that, prior to issuance of the copyright certificate, Sygma New York granted Parish Match Magazine ("Paris Match") the right to one-time use of the Photograph. Subsequent deposition testimony, however, indicates that Sygma S.A.R.L., a legally separate corporation of common ownership with Sygma New York dealt with Paris Match.

Defendants thus assert that one element of ownership in the Photograph, distribution authority in Europe, was transferred. The affidavit in opposition to the motion for summary judgment, after introducing the deposition testimony relating to this issue concludes: "Thus, it is clear that Plaintiff Sygma had no distribution rights in Europe; that it sent the Photograph to Sygma S.A.R.L. ... [and that] only Sygma S.A.R.L. sold rights to the Photograph to Paris Match Magazine."

■ ■ Accepting this factual assertion as accurate, no authority is advanced to defeat Sygma N.Y.'s authority to protect the Photograph from copyright violation. Ownership of the underlying copyright or equitable ownership of the copyright are sufficient, even if the alleged infringement derived from a source other than the copyright owner. *See Kurlan v. C.I.R.*, 343 F.2d 625 (2d Cir.1965), *Kamakazi Corp. v.*

*Robbins Music Corp.*, 534 F.Supp. 69 (S.D.N.Y.1982), *Quinto v. Legal Times of Washington, Inc.*, 506 F.Supp. 554 (D.D.C.1981). In this context, the ambiguity with respect to which Sygma corporation dealt with Paris Match is immaterial to Sygma N.Y.'s ability to enforce its copyright on the Photograph.

■ High Society, Drake, and Dorjam also resist Sygma's motion for summary judgment on the issue of liability on several other grounds. They assert that the Photograph may have been dedicated to the public by prior publication without an accompanying copyright notice. This assertion is left as a bald statement of what might possibly have occurred and is not substantiated with evidence of such publication. In order to show willful abandonment of the copyright defendants would have to establish an overt act by Sygma demonstrating an intention to surrender the copyright. *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F.Supp. 531 (S.D.N.Y.1977), *aff'd*, 592 F.2d 651 (2d Cir.1978). Alternatively, if the defendants are claiming innocent reliance on publication without copyright notice the statutory burden falls on the defendants to "prove that he or she was misled by the omission of notice." 17 U.S.C. § 405(b). Neither showing is put forth by defendants.

High Society's, Drake's and Dorjam's challenges to the validity of the underlying copyright on grounds that the filings were inaccurate were rejected in this court's earlier opinion. Further, defendants conceded at oral argument, in spite of their assertion to the contrary in their 3(g) statement, that Paris Match contained a general copyright notice sufficient to encompass the Photograph in question.

■ In opposing Sygma's motion for summary judgment against Drake and High Society as contributory infringers, defendants rely upon the deposition testimony of Ira Kirschenbaum, vice-president of both Dorjam and Drake, to establish the legal divisions between the entities involved and the lack of involvement of Drake in the in-

fringement. It is uncontested that Drake is the successor in interest to High Society, and the only relationship that requires examination is therefore that between Dorjam, the corporation that publishes "High Society's Celebrity Skin," and Drake.

Kirschenbaum's deposition testimony establishes that most of the administrative functions of publishing the magazine were handled by Drake employees paid directly by Drake, that Drake employees were responsible for obtaining the photographs used in the magazine, and that the individuals listed as Publisher, Editor, Art Director, Production Director, and Researcher on the masthead of "High Society's Celebrity Skin" are Drake employees paid by Drake, not Dorjam. (One Dorjam check of $46.80 is the exception.)

"Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable." *Screen Gems-Columbia Music, Inc. v. Metlis and Lebow Corp.*, 453 F.2d 552, 554 (2d Cir.1972). Further, "the normal agency rule of respondeat superior applies to copyright infringement by a servant within the scope of his employment." *Shapiro, Bernstein & Co. v. H.L. Green Company*, 316 F.2d 304, 307 (2d Cir.1963). Indeed, one who had promoted or induced the infringing acts of another has been held jointly and severally liable even though he had no actual knowledge that the copyright is being violated. *See Gershwin Publishing Corp. v. Columbia Artists Man., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971), *MCA, Inc. v. Wilson*, 425 F.Supp. 443, 456 (S.D.N.Y.1976), *aff'd*, 677 F.2d 180 (2d Cir.1981).

The facts presented in the deposition establish that Drake employees, within the scope of their employment and under the supervision of Drake, undertook the activities leading to the infringement of the copyright. That Drake and Dorjam have separate ownership and that Dorjam may have paid Drake for the services of Drake employees does not serve to absolve Drake of liability for the wrongdoing of its employees. The principles of contributory in-fringement and respondeat superior therefore impose liability on Drake.

**Conclusion**

Sygma's motion for summary judgment with respect to the liability of Dorjam and Drake is granted. Discovery on the issue of damages will be completed by November 16, and pretrial orders will be filed by November 23, 1984.

IT IS SO ORDERED.